**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**

BROOKE BOGGS,

        Plaintiff,                       CASE NO.:

        v.                            JURY TRIAL DEMANDED

A RESTAURANT GROUP, L.L.C.,

        Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, BROOKE BOGGS ("Plaintiff" and/or "Ms. Boggs"), by and through her undersigned counsel, hereby complains of Defendant, A RESTAURANT GROUP, L.L.C. ("Defendant" and/or "ARG"), and alleges as follows:

**INTRODUCTION**

1. Ms. Boggs brings this to seek redress for the Defendant's callous and unlawful acts of discrimination, harassment, and retaliation that she was forced to endure due to her sex and pregnancy.

2. Ms. Boggs brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"); and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA").

**PARTIES**

3. Ms. Boggs is an individual female residing in Baldwin County, Alabama.

4. Defendant is a Domestic Limited Liability Company, with its principal place of business located at 4715 Millhouse Rd, Gulf Shores, AL 36452.

1

5.      At all times relevant, Ms. Boggs was employed at Defendant's store, located at 5160 AL-180, Gulf Shores, AL 36542 ("Gulf Shores Location" and/or "SassyBass").

6.      The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Title VII, the PWFA and the FLSA.

7.      At all relevant times, Defendant was an "employer" within the meaning of, 42 U.S.C. § 2000e(b).

8.      At all times relevant, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

9.      At all relevant times, Defendant was a "covered entity" within the meaning of 42 U.S.C. § 2000gg(2).

10.      At all relevant times, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000gg(3).

11.      At all relevant times, Plaintiff was a "qualified employee" within the meaning of 42 U.S.C. § 2000gg(6).

12.      At all relevant times, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d).

13.      At all relevant times, Plaintiff was a non-exempt hourly employee of Defendant, as the term "employee" is defined by 29 U.S.C. § 203(e).

## JURISDICTION AND VENUE

14.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f); 42 U.S.C. § 2000gg-2(a); and 29 U.S.C. § 201.

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Alabama. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

16.    Ms. Boggs has complied with all administrative requirements to file this action.

17.    On or around July 15, 2024, Ms. Boggs timely filed a charge of discrimination (Charge No. 425-2024-01476) against Defendant with the Equal Employment Opportunity Commission ("EEOC").

18.    On or around March 7, 2025, the EEOC issued Ms. Boggs' Notice of Right to Sue against Defendant.

19.    Ms. Boggs is timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

20.    Ms. Boggs is timely commencing this action more than one-hundred eighty (180) days following the filing of her charge of discrimination.

## FLSA COVERAGE

21.    At all times material, Defendant regularly employed two or more employees for the relevant time that handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendant's business an enterprise covered under the Fair Labor Standards Act.

22.     At all times material, Defendant was an enterprise engaged in interstate commerce in the course of their marketing, locations, services, and sale products that have moved through interstate commerce.

23.     At all times material, Defendant regularly and recurrently obtained, solicited, exchanged, and sent funds to and from outside of the State of Alabama, used telephonic transmissions going outside of the State of Alabama to conduct business, and transmitted electronic information through computers, the internet, via email, and otherwise outside of the State of Alabama.

24.     At all times material, Defendant has had gross revenues in excess of $500,000.00 per year.

25.     At all times material, Defendant was an "enterprise engaged in commerce or the production of goods for commerce," within the meaning of 29 § U.S.C. 206(a).

26.     At all times material, the Defendant had two or more "employees handling, selling or otherwise working on goods or material that have been moved in or produced for commerce by any person," within the meaning of 29 § U.S.C. 203(s)(1)(A).

27.     At all times material, Defendant had an annual gross volume of sale made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated), within the meaning of 29 § U.S.C. 203(s)(1)(A).

## FACTUAL ALLEGATIONS

28.     At all times material, Ms. Boggs was a female and was therefore a protected class member.

29.     At all times material, Ms. Boggs was pregnant and was therefore a protected class member.

30.     At all times material, Ms. Boggs was the mother of a young child and was pregnant with her second child.

31.     At all times material, Darin Smith ("Smith") was an individual male who was employed by Respondent as Owner and Manager. At all times material, Smith held supervisory authority over Ms. Boggs, including the power to hire, fire, demote, and promote Ms. Boggs.

32.     At all times material, Zach Howell ("Howell") was an individual male who was employed by Respondent as General Manager and Property Manager. At all times material, Howell held supervisory authority over Ms. Boggs, including the power to hire, fire, demote, and promote Ms. Boggs.

33.     At all times material, Haley McLeod ("McLeod") was an individual female who was employed by Respondent as Kitchen Manager. At all times material, McLeod held supervisory authority over Ms. Boggs, including the power to hire, fire, demote, and promote Ms. Boggs.

34.     In or around early April of 2024, Defendant interviewed Ms. Boggs for the role of Assistant General Manager ("AGM").

35.     Smith and Howell conducted the interview and asked Ms. Boggs many inappropriate questions that were not related to work, including but not limited to what the father of Ms. Boggs' child did for a living and if there was a "backup plan" for childcare. Ms. Boggs believed the line of questioning was intrusive and left her feeling uncomfortable. Regardless, she hoped this would subside as she proved her ability to effectively serve as the AGM.

36.     In or around April 18, 2024, Ms. Boggs was hired by Defendant to the AGM position.

37.     At all times material, Ms. Boggs was considered a satisfactory employee and had a record of positive performance.

38.     Ms. Boggs was never written up or placed on a performance improvement plan.

**Defendant Unlawfully Retained Tips in Violation of the FLSA**

39.     From the onset of Ms. Boggs' employment, she noticed that Defendant had unlawfully managed their tip-pool that was distributed to its employees.

40.     As an AGM, Ms. Boggs would type the amount of collected tips into a software maintained by Defendant.

41.     The tips were collected and placed into an envelope then taken to a separate building each day to Smith's assistant.

42.     Ms. Boggs was notified by servers, bartenders, and managers that nobody knew where the money would go.

43.     Several of Defendant's employees verified with Ms. Boggs that they were never given any additional tips, and even notified the Department of Labor of this violation.

44.     Defendant's servers would even joke that this system of tip collection was "embezzlement," as they knew they would be handing the money over, but never knew where it ended up.

45.     Further, Ms. Boggs was notified by other Howell and Smith that they would regularly alter and edit the number of tips collected in the system for tips collected during their shifts and other shifts, ultimately reducing the tips distributed to Defendant's employees.

46.     Ms. Boggs expressed her opposition to Defendant's practice of unlawful tip collection and distribution to Howell and Smith but they ignored her and continued their unlawful practices.

## **Defendant Discriminated Against Plaintiff Because of Her Pregnancy**

47.     In or around April 20, 2024, Ms. Boggs informed Howell that she was pregnant but did not need any accommodations at that time.

48.     In or around May 5, 2024, Ms. Boggs reported to Howell that there were large rats in the kitchen.

49.     Ms. Boggs was not only concerned for her safety and the safety of her coworkers but also concerned for the sanitation of the restaurant.

50.     Yet, Howell downplayed her comments and told her to "take care" of the rats. To be clear, Howell and Smith asked Ms. Boggs to kill these large rats and dispose of them outside of the restaurant by herself. Howell gave Ms. Boggs a broom and told her to complete the assignment.



51.    Ms. Boggs showed Howell several videos of these large rats scampering throughout Defendant's kitchen, which he ignored.

52.    Boggs requested the kitchen be sanitized more thoroughly but Defendant failed to take any action. In fact, Defendant regularly asked employees to clock out and kill the rats with their own weapons while customers were not in the building.

53.    Ms. Boggs asked Howell not to assign her the tasks of killing rats because she was worried it could impact her health and pregnancy, but Howell rejected her request.

54.    In or around May 11, 2024, Howell contacted Smith, informing him that Ms. Boggs was pregnant.

55.    Ms. Boggs spoke with Smith and explained that at the time, there was no request for a pregnancy-related accommodation, but she would likely need a pregnancy-related accommodation as the pregnancy advanced.

56.    Ms. Boggs and Howell agreed that they would discuss future accommodations pending Ms. Boggs' doctor's notes, as she would be seeing her doctor later that evening.

57.    In or around May 12, 2024, Howell notified Ms. Boggs that "the best way to move forward [with her pregnancy] would be coming back in the morning and starting as a cashier in the market with a different pay rate."

58.    To be clear, Defendant demoted Ms. Boggs less than 24 hours after Howell notified Smith that Ms. Boggs was pregnant and both Smith and Howell spoke to Ms. Boggs about her pregnancy accommodations.

59.    In or around May 13, 2024, Defendant demoted Ms. Boggs from the AGM position to a cashier and reduced her annual salary from $60,000.00 per year plus benefits and two (2)

weeks of paid time off ("PTO") to an hourly rate of pay of $22.00 per hour with no benefits or PTO.

60.     Defendant replaced Ms. Boggs with Melia Jones, a non-pregnant individual who was significantly less qualified than Ms. Boggs for the AGM position.

61.     Ms. Boggs was absolutely devastated, as she had recently signed a lease in the neighborhood and enrolled her baby into a daycare program based on the salary and benefits of the AGM position.

62.     Ms. Boggs was further relying on the PTO to cover her absence from work following the birth of her child.

63.     Defendant's actions left Ms. Boggs in a financial wreck and caused her severe anxiety, depression, and panic, which jeopardized her pregnancy.

64.     Defendant's unlawful, discriminatory, and retaliatory actions caused Ms. Boggs both physical and emotional distress, leaving her with painful headaches and stomach pain.

65.     Ms. Boggs was shocked by Defendant's decision to demote her as Defendant failed to issue her a single write-up or performance-related complaint to this point in time. Nevertheless, Defendant upheld its decision to demote and punish her because of her pregnancy.

66.     The demotion from AGM to cashier was the direct result of Ms. Boggs notifying Defendant that she was pregnant. In fact, Howell explicitly told Ms. Boggs that "the only option I have for you [now that you are pregnant] is to be a cashier."

67.     Howell never expressed any issues with Ms. Boggs' employment prior to discovering she was pregnant.

68.    Ms. Boggs again reiterated that the demotion was unlawful because she could continue to perform each and every assignment and duty of the AGM for the near future, yet Howell dismissed her statements.

69.    During a face-to-face meeting with Howell, Ms. Boggs stated, "I really thought there was going be at least one option where there would be a simple pregnancy accommodation," to which Howell responded, "this is an accommodation." Howell continued, "when you are no longer pregnant and you are healed, we can put you back to the [AGM] position."

70.    Defendant, by and through Howell, explicitly stated that Ms. Boggs' demotion was a direct result of her pregnancy.

71.    As a result, Defendant left Ms. Boggs with two options: 1) become unemployed and not be able to provide for her family whatsoever, or 2) put her head down and work as a cashier despite being unlawfully discriminated against because of her pregnancy. Ms. Boggs chose the second option and continued to work.

72.    Defendant did not employ or maintain any official Human Resources personnel for Ms. Boggs to report or complain to. Ms. Boggs further had no alternative method of making an official complaint or report regarding Defendant's unlawful conduct.

73.    Many of Ms. Boggs' coworkers saw that Defendant treated her unfairly because she was pregnant. Several of these individuals raised their concerns about Defendant's treatment of Ms. Boggs to her, and they told her that they would support her moving forward if she needed anything.

74.    Ms. Boggs worked on May 13 and 14 of 2024 as a cashier, was not scheduled on May 15-17, and returned to work on May 18, 2024.

75.    During Ms. Boggs' May 18, 2024, shift, Defendant asked her to perform significantly more tasks than a standard cashier. Defendant asked her to run the market register, the liquor register, host guests, and place 'wet floor' signs and buckets beneath roof leaks.

76.    Defendant stated that it provided an "accommodation" to Ms. Boggs by giving her the position of cashier, however Defendant abused Ms. Boggs' new position by assigning her an extensive amounts of random tasks that were not typically assigned to a cashier.

77.    In or around May 19, 2024, Defendant further ordered Ms. Boggs to leave the air-conditioned marketplace to move inventory and boxes in the firehouse, a nearby building with a broken air conditioning unit, causing the building to be approximately 90 degrees.

78.    Again, Ms. Boggs was pregnant and lifting heavy objects in this heat was extremely unsafe for her or her child.

79.    Regardless, McLeod, an individual female who was employed by Defendant as Kitchen Manager, confirmed that Ms. Boggs was required to stock coolers in the near 90-degree building.

80.    Ms. Boggs texted McLeod, "I set a thermometer out and it's higher than the thermometer. Over 85 [degrees] probably pushing 90 even with two fans on, all of the coolers are empty and you're wanting me to restock all of them because no one else has. I'm pregnant this is ridiculous. I need to go to the hospital and get fluids. I'm dehydrated, overheating, and I feel like I'm gonna pass out. I clocked out already."

81.    McLeod did not respond and failed to address Ms. Boggs' concerns regarding the shift assignment or her declining health. Again, Defendant failed to aid Ms. Boggs despite her complaints and reports of unlawful conduct.

82.    Ultimately, after a period of time stocking coolers in the 90-degree firehouse, Ms. Boggs could sense her health was at risk and that she was very close to fainting, causing potential damage to herself and her child.

83.    Ms. Boggs nearly passed out and decided to prioritize her health, so she rushed to the emergency room at South Baldwin Hospital.

84.    Ms. Boggs provided medical notes from the hospital to Defendant, which were received but ignored.

85.    Defendant did not ask Ms. Boggs about her condition, if she was safe, or if her baby was alright. Defendant merely responded by removing Ms. Boggs from each and every shift for the next week, further discriminating and retaliating against her.

86.    Ms. Boggs asked Defendant about her lack of shifts but was repeatedly ignored. Ms. Boggs specifically texted McLeod about her shifts, but did not hear back.

87.    In or around May 29, 2024, nearly ten (10) days of being ignored by Defendant, Ms. Boggs texted Howell the following:

> "I have my shifts I was supposed to work up to the 30th and then that same evening I left, at the ER my schedule was made blank. Today 05/29/24 my app is inactive with no access to my account that shows the schedule and paystubs on restaurant 365. Can I get an official answer? I assume I am terminated after not being put back on the schedule and due to being unable to see anything now. No one has given confirmation and I just need a simple text back. It's been since May 19th."

88.    Again, Defendant, by and through Howell, ignored Ms. Boggs and failed to respond to her. Defendant further removed Ms. Boggs' access to her shift schedule or payroll.

89.    In or around June 11, 2024, Ms. Boggs still had not heard back from Defendant so she sent the following email to Smith, Howell, and McLeod:

> I have reached out to [McLeod] repeatedly on 5/19/24. I have reached out to Zach Howell on 05/29/24. I have not been given any answers by either manager about being employed or being put on the schedule. I also was removed from the

Restaurant365 app shortly after my last text to Zach. This took away my ability to see any schedule, or to have any contact with SassyBass. After being ignored repeatedly and given no answer from either manager I am taking this as a termination as it is 06/11/24 and I still have never been answered. Please send me a letter of termination stating my last date of work which is 05/19/24.

90.     Defendant, by and through its owner, Darin Smith, responded the following morning, "We have your exit from Sassy Bass listed as 'Employee Voluntary Exit'."

91.     Defendant effectively terminated Ms. Boggs on May 19, 2024.

92.     The events described above are just some of the examples of unlawful discrimination, harassment, and retaliation that Defendant subjected Ms. Boggs to on a continuous and on-going basis throughout her employment.

93.     Defendant unlawfully discriminated against Ms. Boggs because of her sex and pregnancy, and for requested pregnancy-related accommodations.

94.     Defendant retaliated against Ms. Boggs for asserting her rights and for opposing sex and pregnancy discrimination, and for requesting pregnancy-related accommodations.

95.     Defendant violated Title VII and the PWFA by subjecting Ms. Boggs to a hostile work environment, disparate treatment, and retaliation.

96.     Defendant violated the FLSA by retaliating against Ms. Boggs for complaining and reporting unlawful tip-theft.

97.     Defendant exhibited a continuous practice of discrimination, and Ms. Boggs therefore makes all claims herein under the continuing violations doctrine.

98.     As a result of the acts and conduct complained herein, Ms. Boggs has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Boggs has also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Boggs has further experienced severe emotional and physical distress.

99.    As a result of Defendant's actions, Ms. Boggs felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

### CAUSES OF ACTION
### COUNT I
### 42 U.S.C. § 2000e-2
### *Title VII Discrimination*

100.    Ms. Boggs reincorporates the factual allegations in Paragraphs 28 through 99.

101.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

102.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

103.    Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

104.    Ms. Boggs was an individual female and was therefore a protected class member.

105.    Ms. Boggs was a pregnant female and was therefore a protected class member.

106.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

107. Defendant subjected Ms. Boggs to discriminatory treatment on the basis of her sex and pregnancy. Defendant's discriminatory treatment included, but was not limited to, 1) demoting Ms. Boggs from Assistant General Manager to cashier after discovering she was pregnant, 2) removing Ms. Boggs' work-related benefits, 3) denying Ms. Boggs PTO that was previously agreed upon, 4) assigning Ms. Boggs excessive tasks and duties as a cashier, including organizing inventory in a 90-degree building without air conditioning, 5) demanding Ms. Boggs kill and dispose of large rats that roamed Defendant's kitchen and office, 6) denying Ms. Boggs' request for pregnancy-related accommodations, 7) removing Ms. Boggs from the shift schedule, 8) locking Ms. Boggs out of the scheduling and payroll application, and 9) unlawfully terminating Ms. Boggs' employment.

108. Defendant targeted Ms. Boggs because of her sex and pregnancy. No similarly situated male employees endured the discriminatory conduct that Ms. Boggs was forced to endure.

109. The discriminatory actions of the Defendant against Ms. Boggs, as described and set forth above, constitute an adverse employment action for the purposes of Title VII. In subjecting Ms. Boggs to adverse employment actions, the Defendant intentionally discriminated against Ms. Boggs with respect to the compensation, terms, conditions, or privileges of her employment.

110. Even if Defendant could assert legitimate reasons for its adverse actions taken against Ms. Boggs, her protected class status, at a minimum, was a motivating factor for Defendant's discriminatory conduct and Ms. Boggs explicitly reserves the right to pursue a mixed-motive theory against Defendant.

111. As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Boggs has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Boggs has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Boggs accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

112.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Boggs' rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

113.    The conduct of the Defendant deprived Ms. Boggs of her statutory rights guaranteed under Title VII.

114.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT II
### 42 U.S.C. § 2000e-3
### *Hostile Work Environment*

115.    Ms. Boggs reincorporates the factual allegations in Paragraphs 28 through 99.

116.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment.

117.    Ms. Boggs was a pregnant woman and is therefore a protected class member.

118.    Defendant's harassment and discrimination was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

119.    Defendant's severe and pervasive conduct included, but was not limited to, 1) subjecting Ms. Boggs to a demeaning and abusive work environment where she was repeatedly belittled and mocked due to her pregnancy, including being assigned the task of organizing heavy inventory in a 90-degree building without air conditioning, 2) requiring Ms. Boggs to kill and dispose of large rats that roamed the kitchen and office, 3) repeatedly ignoring Ms. Boggs after she required hospitalization due to her job assignment, and 4) unlawfully terminating Ms. Boggs' employment because of her pregnancy, after she was systematically subjected to demotions, wage reductions, and unfavorable work conditions.

120.    Defendants targeted Ms. Boggs because she was a pregnant woman. No similarly situated male employees endured the harassing conduct that Ms. Boggs was forced to endure.

121.    Defendant's harassment was unwelcomed by Ms. Boggs, who had no choice but to endure the discriminatory treatment.

122.    Defendant's harassment and discrimination of Ms. Boggs negatively and significantly impacted Ms. Boggs' life. Defendant's conduct made Ms. Boggs feel isolated, embarrassed, and ashamed.

123.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Boggs has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Boggs has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Boggs accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

124.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Boggs' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

125.    The conduct of Defendants deprived Ms. Boggs of her statutory rights guaranteed under Title VII.

126.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT III
### 42 U.S.C. § 2000e-3
### *Title VII Retaliation*

127.    Ms. Boggs reincorporates the factual allegations in Paragraphs 28 through 99.

128.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

129.    Ms. Boggs was an individual female and was therefore a protected class member.

130.    Ms. Boggs was a pregnant female and was therefore a protected class member.

131.    Ms. Boggs engaged in a protected activity when she notified Defendant that she was pregnant, requested pregnancy related accommodations, and opposed Defendant's discriminatory and unlawful conduct, including but not limited to Defendant, 1) demoting Ms. Boggs to the cashier role because of her pregnancy, 2) intentionally assigning Ms. Boggs additional tasks in the role of cashier because of her pregnancy, 3) assigning Ms. Boggs unfavorable tasks including organizing inventory in a 90-degree building without air conditioning, 4) refusing to schedule Ms. Boggs for work shifts, 4) creating and fostering an abusive and hostile work environment by subjecting her to degrading treatment that interfered with her ability to

18

perform her job, 5) escalating the hostility to the point Ms. Boggs ended up in the emergency room as a result of her employment, and 6) denying Ms. Boggs' request for pregnancy-related accommodations.

132.    Ms. Boggs explicitly told Defendant that its actions were discriminatory and unlawful, and she complained about Defendant's actions to her managers.

133.    In response to Ms. Boggs asserting her right to enjoy the same employment benefits as every other employee, Defendant retaliated against Ms. Boggs.

134.    Defendant retaliated against Ms. Boggs by unlawfully terminating Ms. Boggs' employment.

135.    Defendant took the above-mentioned materially adverse action, among others, against Ms. Boggs because of her protected activities, including her report of unlawful discrimination just before Defendant unlawfully terminated her employment.

136.    Any reasonable employee in Ms. Boggs' position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Boggs was forced to endure.

137.    Defendant's alleged basis for its adverse employment actions against Ms. Boggs are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

138.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of Title VII, Ms. Boggs has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Boggs has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible

damages. Ms. Boggs accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

139.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Boggs' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

140.    The conduct of the Defendant deprived Ms. Boggs of her statutory rights guaranteed under Title VII.

141.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT IV
### 42 U.S.C. § 2000gg-1
### *PWFA Discrimination*

142.    Ms. Boggs reincorporates the factual allegations in Paragraphs 28 through 99.

143.    The PWFA provides that it is unlawful for an employer to deny employment opportunities, or to take an adverse action in the terms, conditions, or privileges of employment, against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee. 42 U.S.C. §§ 2000gg-1(3), (5).

144.    A known limitation under the PWFA includes any physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000gg(4).

145.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

146.    Ms. Boggs requested reasonable accommodations including working in air-conditioned spaces and a limitation on physical exertion due to her pregnancy-related medical conditions.

147.    Defendant failed to reasonably accommodate Ms. Boggs' pregnancy and pregnancy-related conditions and failed to engage in an interactive process regarding her accommodation requests.

148.    Defendant entirely ignored Ms. Boggs' request for pregnancy-related accommodations despite her numerous attempts to obtain an accommodation.

149.    Ms. Boggs could perform the essential functions of her position with or without a reasonable accommodation.

150.    Defendant further subjected Ms. Boggs to discriminatory treatment on the basis of her pregnancy, including but not limited to, 1) demoting Ms. Boggs from Assistant General Manager to cashier after discovering she was pregnant, 2) removing Ms. Boggs' work-related benefits, 3) denying Ms. Boggs PTO that was previously agreed upon, 4) assigning Ms. Boggs excessive tasks and duties as a cashier, including organizing inventory in a 90-degree building without air conditioning, 5) demanding Ms. Boggs kill and dispose of large rats that roamed Defendant's kitchen and office, 6) denying Ms. Boggs' request for pregnancy-related accommodations, 7) removing Ms. Boggs from the shift schedule, 8) locking Ms. Boggs out of the scheduling and payroll application, and 9) unlawfully terminating Ms. Boggs' employment.

151.    Defendant targeted Ms. Boggs because she was pregnant and because of her known limitations related to her pregnancy. No similarly situated non-pregnant employees endured the discriminatory conduct that Ms. Boggs was forced to endure.

152.    Ms. Boggs' request for pregnancy-related accommodations included, but was not limited to, obtaining additional breaks and limiting excessive physical exertion. Defendant not only failed to accommodate her but actively made her working conditions more difficult by reducing her wages and increasing her stress.

153.    The discriminatory actions of the Defendant against Ms. Boggs, as described and set forth above, constitute an adverse employment action for the purposes of the PWFA. In subjecting Ms. Boggs to an adverse employment action, the Defendant intentionally discriminated against Ms. Boggs with respect to the compensation, terms, conditions, or privileges of her employment.

154.    Further, Defendant failed to engage in the interactive process required under the PWFA by refusing to acknowledge or discuss Ms. Boggs' request for pregnancy-related accommodations. Defendant made no effort to explore potential reasonable accommodations or alternatives, despite Ms. Boggs' repeated attempts to initiate this discussion.

155.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the PWFA, Ms. Boggs has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Boggs has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Boggs accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

156.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Boggs' rights under the PWFA, warranting the imposition of punitive damages, in addition to compensatory damages.

157.    The conduct of the Defendant deprived Ms. Boggs of her statutory rights guaranteed under the PWFA.

158.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT V
### 42 U.S.C. § 2000gg-2(f)
*PWFA Retaliation/Interference*

159.    Ms. Boggs reincorporates the factual allegations in Paragraphs 28 through 99.

160.    The PWFA prohibits retaliation in any manner against a person who has opposed an unlawful discriminatory practice or act, or who has participated in any investigation, proceeding, or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000gg-2(f)(1).

161.    The PWFA further prohibits an employer from coercing, intimidating, threatening, or interfering with any individual's exercise of any protected rights, or on account of any individual having exercised any protected rights. 42 U.S.C. § 2000gg-2(f)(2).

162.    Ms. Boggs was pregnant and requested pregnancy-related accommodations, and was therefore protected under the PWFA.

163.    Ms. Boggs engaged in a protected activity under the PWFA when she informed Defendant of her pregnancy, requested reasonable accommodations from Defendant on account of her pregnancy, and opposed Defendant's unlawful conduct in violation of the PWFA.

164.    In response to Ms. Boggs asserting her protected rights under the PWFA, Defendant retaliated against Ms. Boggs.

165.    Defendant retaliated against Ms. Boggs and interfered with Ms. Boggs' rights by engaging in conduct, including but not limited to, ) demoting Ms. Boggs to the cashier role because of her pregnancy, 2) intentionally assigning Ms. Boggs additional tasks in the role of cashier

because of her pregnancy, 3) assigning Ms. Boggs unfavorable tasks including organizing inventory in a 90-degree building without air conditioning, 4) refusing to schedule Ms. Boggs for work shifts, 4) creating and fostering an abusive and hostile work environment by subjecting her to degrading treatment that interfered with her ability to perform her job, 5) escalating the hostility to the point Ms. Boggs ended up in the emergency room as a result of her employment, and 6) denying Ms. Boggs' request for pregnancy-related accommodations.

166.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Boggs because of her protected activities.

167.    Defendant's alleged bases for its adverse employment actions against Ms. Boggs are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

168.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the PWFA, Ms. Boggs has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Boggs has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Boggs accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

169.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Boggs' rights under the PWFA, warranting the imposition of punitive damages in addition to compensatory damages.

170.    The conduct of the Defendant deprived Ms. Boggs of her statutory rights guaranteed under the PWFA.

171.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

<u>**COUNT VI**</u>
**29 U.S.C. § 203(m)**
***FLSA Violation***

172.    Ms. Boggs reincorporates the factual allegations in Paragraphs 21 through 99.

173.    Defendant was Ms. Boggs' employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

174.    Under 29 U.S.C. § 203, an employer "may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips. . ." 29 U.S.C. § 203(m)(2)(B).

175.    At all times material, Smith willfully retained tips left in his care by patrons to be distributed to Ms. Boggs and other employees, and willfully retained a share of the tip pool.

176.    At all times material, Smith willfully retained tips left in his care by patrons to be distributed to Ms. Boggs and other employees, and willfully retained a share of the tip pool.

177.    At all times material, Defendant allowed Smith to improperly participate in the tip pool and/or keep a portion of the tips earned by Ms. Boggs and other employees, in violation of the FLSA.

178.    As a direct and proximate result of Defendant's retaining a portion of the tips earned or received by Ms. Boggs and/or distributing a portion of the tips to traditionally non-tipped employees, such as managers and supervisors, Defendant violated the FLSA.

179.    Pursuant to 29 U.S.C. § 216(b), Ms. Boggs is entitled to payment of all tips that Defendant was required to pay to Ms. Boggs, that Defendant improperly retained, and/or that

Defendant improperly distributed to traditionally non-tipped employees, such as managers and supervisors, and an additional equal amount in the form of liquidated damages.

180.    Defendant willfully and intentionally refused to pay Ms. Boggs all the tips she earned or received during the relevant time.

181.    Defendant either knew from prior experience or recklessly failed to investigate whether its failure to pay Ms. Boggs all of the tips she earned and/or that patrons left for her benefit, violated the FLSA, and then it failed to timely correct its violation(s).

182.    The employment records for Ms. Boggs from which the Defendant's liability can be ascertained are within the exclusive custody and control of the Defendant.

183.    At this time, the total amounts are unknown and are to be determined upon further investigation.

184.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**29 U.S.C. § 215(a)(3)**
***FLSA Retaliation***

185.    Ms. Boggs reincorporates the factual allegations in Paragraphs 21 through 99.

186.    Defendant was Ms. Boggs' employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

187.    Under 29 U.S.C. § 215(a)(3), it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceed under of related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

188.    Ms. Boggs engaged in a protected activity when she opposed Defendant's unlawful wage and hour violations and complained about Defendant's unlawful wage and hour violations.

189.    To be clear, Ms. Boggs complained about Defendant's unlawful collection and distribution of tips to Smith and other managers who were not entitled to receive tips.

190.    In response to Ms. Boggs asserting her right to enjoy the same employment benefits as every other employee, Defendant retaliated against Ms. Boggs.

191.    Defendant retaliated against Ms. Boggs by engaging in conduct, including but not limited to, refusing to correct the tip distribution and unlawfully terminating Ms. Boggs' employment.

192.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Boggs because of her protected activities.

193.    Defendant's retaliatory actions were causally connected to Ms. Boggs' protected activities.

194.    Any reasonable employee in Ms. Boggs' position would be dissuaded from opposing unlawful pay practices if they knew that they would be subjected to the kind of treatment that Ms. Boggs was forced to endure.

195.    Defendant's alleged basis for its adverse employment actions against Ms. Boggs are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

196.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the FLSA, Ms. Boggs has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Boggs has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible

damages. Ms. Boggs accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

197.    Defendant willfully and intentionally retaliated against Ms. Boggs for her protected activities under the FSLA.

198.    Ms. Boggs further requests that her attorney's fees and costs be awarded as permitted by law.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of Title VII, the PWFA, and the FLSA.

Dated: Miami, Florida
May 28, 2025

**DEREK SMITH LAW GROUP, PLLC**         */s/ Daniel J. Barroukh*
*Co-Counsel for Plaintiff*                        Daniel J. Barroukh, Esq.
                                                          Florida Bar No.: 1049271
                                                          Derek Smith Law Group, PLLC
                                                          520 Brickell Key Drive, Suite O-301
                                                          Miami, FL 33131
                                                          Tel: (305) 946-1884
                                                          Danielb@dereksmithlaw.com
                                                          (Pro Hac Vice Motion Forthcoming)

**LATTOF & LATTOF, PC**     <u>/s/ J. Ashton Lattof</u>
*Co-Counsel for Plaintiff*     J. Ashton Lattof, Esq.(LAT024)
             Alabama Bar No.: 1178P08X
             Lattof & Lattof, P.C.
             156 St Anthony St
             Mobile, AL 36603
             Tel: (251) 432-6691
             <u>ashton@lattoflaw.com</u>